5993.  CHESHIRE v. WESTERN UNION TELEGRAPH COMPANY.

RUSSELL, C. J.   1. The authority of the appellate division of the municipal court of Atlanta on a motion for a new trial is limited to "sustaining or overruling said motion." Acts 1913, p. 169, sec. 42 (f). The appellate division is without authority to render a final judgment in a cause when, upon the hearing of a motion for new trial, the verdict and the judgment of the trial judge entered thereon are set aside.

2. The damages which the plaintiff sought to recover, though to some extent contingent, were not too remote to be recovered; for, in view of the evidence as to a contract for his services, the case is distinguished upon its facts from Clay v. W. U. Tel. Co., 81 Ga. 285 (6 S. E. 813, 12 Am. St. R. 316), and similar decisions. The evidence authorized the verdict for damages in favor of the plaintiff, and there were no material errors in the trial.

3. The judgment of the appellate division of the municipal court being nugatory, it is adjudged by this court, in the exercise of the power conferred by section 6103, paragraph 2, of the Civil Code, and article 6, section 2, paragraph 9, of the constitution (Civil Code, § 6506), that the judgment heretofore entered by the trial judge in the municipal court, for damages in the sum of $25, with costs, be affirmed, and that the plaintiff in error recover of the defendant in error the costs incurred in the motion for a new trial and in prosecuting this writ of error.

                         Judgment reversed, with direction.

DECIDED AUGUST 4, 1915.   REHEARING DENIED OCTOBER 2, 1915.

Action for penalty and damages; from municipal court of Atlanta. September 4, 1914.

Dr. J. S. Cheshire sued the telegraph company for $79.50, alleging, that on October 28, 1913, he delivered to the defendant at its office in Atlanta, Ga., a telegram addressed to Dr. S. E. J. Watson, Tallapoosa, Ga., in which he said, "Look for me at the time stated;" that he deposited with the defendant the usual charge of 25 cents, and the defendant accepted this sum, for transmitting and delivering the message, but the defendant did not deliver the telegram with due diligence, and became liable to pay him as a penalty $25, for which he sues;" that by reason of the failure so to deliver the telegram he was injured and damaged in the further sum of $54.70, as follows: $3.20 for railroad fare from Atlanta to Tallapoosa and return, $1.50 for meals, and $50 by reason of the fact that he was unable to perform an operation and attend a patient in the line of his profession as physician and surgeon; that by reason of the failure to deliver the telegram with due diligence, the opportunity to perform the said service was lost to him. By amendment he alleged, that he went to Tallapoosa at the time stated; that the

patient did not reside in Tallapoosa, but was residing in the country, and he went to her home in the country and saw her, and the operation which he went to perform was not performed, because of the defendant's failure to deliver the telegram to Dr. Watson; that Dr. Watson was to go with him and to assist in the operation, but, not receiving the telegram and not hearing from him, Dr. Watson went to Atlanta to see him, and passed him on the train, and when the plaintiff got to Tallapoosa Dr. Watson was in Atlanta, and when Dr. Watson got back to Bremen the plaintiff met him there and they went to the patient, and, because of the delay, she refused to allow the operation; that he was to have arrived at her house at 9 o'clock a. m., and did not get there until about 4:30 p. m.

At the trial Dr. Watson testified, that he was a physician, practising in Tallapoosa, Ga., and on Sunday, October 26, 1913, a patient came to him for examination and he found that she was suffering from a fibroid uterine tumor, which he told her should be removed by an operation; that he told her the operation would cost $150, and she handed to him a roll of bills amounting to between three and five hundred dollars, and said she was able to pay the money; that he handed the money back to her without retaining any of it; that she had come from Alabama to have the operation performed, and was staying with relatives, three and a half miles in the country; that he told her that on Wednesday morning, October 29, he would drive out to the place where she was staying, bringing with him another doctor, to assist him, and would at that time perform the operation; that when the patient left his office he wrote to Dr. J. S. Cheshire, of Atlanta, stating that he would probably have an operation to perform during the week, for which he would receive $150, and he would telegraph Cheshire later with regard to having Cheshire assist him in the operation, and as compensation he would "whack up" with Cheshire the fee of $150; that on Tuesday, October 28, he sent to Cheshire a telegram (introduced in evidence), which said: "Come to Tallapoosa Wednesday morning on # 35. Answer to-day at Tallapoosa, Georgia, at my expense;" that no telegram in reply to this message was ever received, though the witness lived within 30 or 40 yards from the defendant's office at Tallapoosa and had his office across the street from the defendant's office; that, not having received a reply from Cheshire, he went to Atlanta Wednesday morning, taking the train

between 5 and 6 o'clock, to find Cheshire and get him to perform the operation, but did not find him and returned to Tallapoosa, arriving between 3 and 4 o'clock the same afternoon; that he then found Cheshire in Tallapoosa, and they at once got in a buggy and drove to the house where the patient was staying; that he found that her condition had not changed since Sunday, and he told her that the operation ought to be performed, and that he and Dr. Cheshire had come for the purpose of performing it, but she said that she was superstitious and that the delay in the arrival of the doctors had made her nervous; that the nurse was present at 9 o'clock, but had gone, and because of the delay she would not allow the operation to be performed; that the witness and Cheshire then returned to Tallapoosa, and Cheshire left for Atlanta, and a few days later the patient left Georgia without having had the operation performed.

The plaintiff introduced the telegram referred to in his petition, and testified, that on October 28, 1913, he delivered it to the defendant, as a response to Dr. Watson's telegram, referred to above, and that the charges on the telegram were properly paid; that on October 29, 1913, he left Atlanta and arrived in Tallapoosa between 7 and 8 o'clock a. m., and found that Dr. Watson had gone to Atlanta; that on Dr. Watson's return from Atlanta that afternoon they went to the patient, but it was then too late to perform an operation with the kind of light they would have had; that he remained in the buggy and did not go into the house with Dr. Watson; that they were willing and able to perform the operation; that some days before that he had an agreement with Dr. Watson that he was to perform the operation and was to have $50 for his services, and Dr. Watson assured him that he would be back by the middle of the afternoon; that Dr. Watson was to get the money from the patient. The witness testified to the items of expense set out in the petition, and that a reasonable fee for his time and absence from his office would be $50. He introduced in evidence a receipt of the telegraph company for 25 cents "deposited to guarantee payment" of charges on the telegram. No other witness was introduced.

The jury rendered a verdict against the defendant for $25 "damages." The defendant made a motion for a new trial, which was overruled, and it then entered an appeal to the appellate division

of the municipal court. The appellate division, after hearing the appeal, passed an order setting aside the judgment in the plaintiff's favor and rendering final judgment against him. He excepted, alleging that the appellate division was without authority to render final judgment, and that the judgment was contrary to the facts in the case.

C. D. Maddox, for plaintiff, cited: Acts 1913, p. 169, sec. 42 (f); Brooke v. W. U. Tel. Co., 119 Ga. 694; W. U. Tel. Co. v. Fatman, 73 Ga. 286 (4); W. U. Tel. Co. v. Lindley, 89 Ga. 484.

Dorsey, Brewster, Howell & Heyman, John K. MacDonald Jr., for defendant, cited: 9 Cyc. 295, 604-6; 1 Am. & Eng. Enc. L. 1119.